GASKINS, J.
I Tin this worker’s compensation case, the claimant, Charles Williams, appeals from a judgment denying him benefits. We affirm.
FACTS
Beginning in 1995, the claimant was employed as a battery plant assembly worker by GNB Technologies, now Exide Technologies, Inc. According to the claimant, he was injured at work on Friday, June 16, 2000, while pushing lead pegs in a melting pot. He testified that he continued to work the shift but experienced “tightness” in his back. He thought that he mentioned his back hurting to his supervisor, Charles Sharbono, but he was not sure. Also, he was not sure if he mentioned his back pain to his brother, Fred Williams, who worked the same graveyard shift from midnight to 8 a.m. When he tried to get up to go to work on Sunday night, he stated that he was unable to get out of bed due to back pain. He called in to his employer and went to see Dr. David Hudson, a family practitioner.
Dr. Hudson saw the claimant on June 19, 2000. His records show that the claimant was complaining “of pain in the lumbar region over the last day or two without recent history of trauma. He- does admit to intermittent pain in the left and right lower back on occasion.” Dr. Hudson testified that he did not ask the claimant if he was injured at work because the history indicated that he did not recall a specific injury. A subsequent MRI showed disc herniation or bulging at two levels, as well as loss of hydration or degenerative changes.
On July 25, 2000, the claimant saw Dr. David Cavanaugh, a neurosurgeon. His notes recount the following history from the claimant: |2“He states that about six weeks ago, without any particular precipitating event, he had increased low back pain. He woke up with it.” A series of epidural steroid injections provided minimal relief. In Dr. Cavanaugh’s opinion, surgery would not be beneficial. Dr. Ca-vanaugh referred the claimant back to Dr. Hudson, who then sent him to a pain management specialist, Dr. Sudar Tanga.
Dr. Tanga saw the claimant in January 2001. His notes recite the following history from the claimant: “The patient complains of this pain since 6/16/00. He says that he noticed a burning pain in the back and he continued to work, went home, and the next day he woke up and he could not get out of bed.... He thinks the pain is secondary related to his work when he was turning around and doing repeated manual *361 activities.” Dr. Tanga advised the claimant to see Dr. Pierce Nunley.
Dr. Nunley, an orthopedic specialist, saw the claimant in May 2001. According to his notes, “The patient states that on June 16, 2000 while working at Exide Technologies, he was utilizing ... a fork lift to lift some lead pegs and place them on a shelf. When he was pushing them onto the shelf, he felt a ‘pull in his back.’ Since this incident, he has been unable to work.”
The claimant’s brother testified that the claimant told both him and their supervisor, Mr. Sharbono, about having back pain on June 16, 2000. However, Mr. Sharbono testified that he did not recall the claimant or his brother mentioning the claimant having back pain or injuring his back during that shift. Russell Jorgensen, a union representative at the plant, |stestified about advising the claimant to have the proper forms filled out. The claimant testified that the plant nurse, Vicki Tingler Dust, told him that since he did not report the accident promptly, he did not have a workers’ compensation claim. Ms. Dust denied this. She testified that the claimant first came to see her on July 17, 2000, and told her that he hurt his back at work. However, upon questioning, he was unable to recall an injury. She testified that he never told her that he injured his back at work on June 16, 2000, while lifting pieces of lead. She testified that plant employees such as the claimant were instructed as to the proper procedure for reporting work-related injuries. In fact, the claimant had filled out an injury report in 1999 for an elbow injury.
Rhonda Engh, a human resources assistant at the plant, testified that she handled the short-term disability benefits claim for the claimant. The claimant filled out and signed an application form in which he marked that the claim arose from illness, not accident. A form from Dr. Hudson’s office filled out in conjunction with the application for short-term disability benefits also indicated that the claim was due to illness, not injury. The claim was initially denied by the insurer pursuant to the policy’s work-related injury exclusion because the claimant’s neurosurgeon indicated his condition seemed to be work-related. Ms. Dust submitted a memo in which she recounted the claimant’s inability to relate his back problem to a specific work-related injury. Thereafter, the insurer approved the claim for short-term disability benefits.
|4In September 2000, the claimant filed a disputed claim for compensation with the Office of Workers’ Compensation. Trial was held in October 2001. By judgment signed February 1, 2002, the workers’ compensation judge (WCJ) ruled in favor of the employer due to the claimant’s failure to prove by a preponderance of the evidence that he sustained a work-related accident and resulting back injury on June 16, 2000, while in the course and scope of his employment.
The claimant appealed. Due to the Chapter 11 bankruptcy proceedings of the employer, the case was stayed. The stay in this court was lifted in September 2006.
LAW
The plaintiff-worker in a workers’ compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992).
In determining whether the worker has discharged his burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. Bruno v. Harbert *362 International Inc., supra. A claimant’s testimony alone may be sufficient to establish an accident provided that (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International Inc., supra; Sheppard v. Isle of Capri, 40,048 (La.App.2d Cir.8/17/05), 909 So.2d 699. In determining | ¿whether the Bruno elements are satisfied, the commentators have articulated six pertinent factors the courts have considered: (1) late report, (2) supervisor and coworker testimony, (3) family and friends’ testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. Blair v. Wal-Mart Stores, Inc., 2001-2211 (La.App. 4th Cir.5/15/02), 818 So.2d 1042, citing 13 H. Alston Johnson III, Workers’ Compensation Law and Practice (La. Civil Law Treatise), § 253 (3d ed.1994); 1 Denis Paul Juge, Louisiana Workers’ Compensation, § 8:1 (2d ed.2002). This court has used these factors. Sheppard v. Isle of Capri, supra; Brock v. Frymasters, 41,561 (La.App.2d Cir.11/1/06), 942 So.2d 613.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). In applying the manifest error-elearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, Through Dept, of Transp. & Dev., supra. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart v. State, Through Dept. of Transp. & Dev., supra; Seal v. Gaylord Container Corporation, 97-0688 (La.12/02/97), 704 So.2d 1161; Gilliam v. Manhattan/Whitaker Construction Company, 30,566 (La.App.2d Cir.5/13/98), 714 So.2d 101, writ not considered, 1998-1845 (La.9/4/98), 723 So.2d 429; Brock v. Frymasters, 6supra. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Through Dept. of Transp. & Dev., supra; Gilliam v. Manhattan/Whitaker Construction Company, supra. The workers’ compensation judge’s factual findings are subject to the manifest error rule. Rosson v. Rust Constructors, Inc., 32,789 (La.App.2d Cir.3/1/00), 754 So.2d 324, writ denied, 2000-0914 (La.5/26/00), 762 So.2d 1105. It is well-accepted that credibility calls are the function of the trial court. Bruno v. Harbert International Inc., supra.
DISCUSSION
The claimant and his wife testified that he told Dr. Hudson and Dr. Cava-naugh that he injured his back at work; they were unable to explain why the notes of both doctors specified that no history of a recent trauma was given. The claimant also admitted that he checked illness, not accident, on the short-term disability form he signed on July 26, 2000; however, he asserted that Dr. Hudson’s office instructed him to do so. There is also conflict in the testimony as to whether the claimant reported his alleged injury to his supervisor as required by company policy. The claimant was unsure as to whether he told his brother or the supervisor. His brother testified that the claimant told him and the supervisor. However, the supervisor did not recall being informed of any injury by the claimant or his brother. The evidence demonstrated that the employer had a prescribed procedure for reporting work-related injuries and that the claimant was *363 aware of that procedure and had complied with it in the past. The testimony |7of the employer’s witnesses indicated that the claimant failed to follow the procedure to report his alleged back injury.
In the instant case, the claimant’s testimony was contradicted. The WCJ was required to make credibility calls to resolve the conflicts in the testimony presented at trial by the various witnesses. The WCJ could reasonably have found the testimony of the employer’s witnesses, the failure of the claimant to properly report his alleged work-related injury and the history given by the claimant indicating no particular event contradicted and/or cast suspicion on the testimony of the claimant and his witnesses. Under the circumstances of this case, we are unable to find that the WCJ was manifestly erroneous or clearly wrong in her decision that the claimant failed to prove by a preponderance of the evidence that he sustained a work-related injury.
CONCLUSION
The judgment of the WCJ dismissing the claims of Charles Williams is affirmed. Costs are assessed against the appellant.
AFFIRMED.